IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

THOMAS M. UBL, )
 )
    Plaintiff, )
 )
v. ) 1:13-cv-262 (LMB/IDD)
 )
CHRISTOPHER I. KACHOUROFF, )
 )
    Defendant. )

MEMORANDUM OPINION

    Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss") [Dkt. No. 3], in which plaintiff seeks to hold the defendant, who is an attorney, liable for misrepresentations the defendant allegedly made over three years ago during civil litigation that the plaintiff filed in this Court. For the reasons stated in open court and more fully developed in this Memorandum Opinion, defendant's Motion to Dismiss will be granted.

       I.    BACKGROUND

    Plaintiff Thomas M. Ubl ("Ubl"), a Florida resident, has alleged abuse of process and negligent infliction of emotional distress claims against Virginia attorney Christopher I. Kachouroff ("Kachouroff"). Kachouroff was one of several opposing counsel in qui tam litigation initiated by Ubl against his former employer, IIF Data Solutions, Inc. ("IIF"), and its

president, Charles Patten, Sr. Am. Compl. ¶¶ 1-4; see United States ex rel. Ubl v. IIF Data Solutions, No. 1:06cv641, 2010 WL 1726767 (E.D. Va. Apr. 28, 2010), aff'd in part, rev'd in part, 650 F.3d 445 (4th Cir. 2011). Both of Ubl's claims arise from a three-page declaration that Kachouroff filed in that qui tam litigation to support the defendants' opposition to Ubl's motion to enforce a settlement agreement. See Am. Compl. ¶ 6, Ex. A. In the lawsuit before this Court, Ubl claims that the declaration was false and that Kachouroff knowingly submitted it "in an attempt to convince the Court to deny the Motion to Enforce Settlement on a false premise." Id. ¶ 16.[1]

Ubl's earlier qui tam action involved IIF's acquisition of government contracts after providing the United States General Services Administration ("GSA") with information about its sales practices, which GSA uses to obtain an option for federal agencies to procure products and services at the best possible prices. Ubl, 650 F.3d at 448. Ubl alleged that IIF not only misrepresented its commercial price list, hourly rates, and

---

[1] A fair review of both the district and appellate courts' decisions summarizing the litigation establishes that Kachouroff's declaration formed no part of their rationale for refusing to enforce the May 6, 2008 settlement agreement. Instead, those courts found dispositive that the government never approved the settlement agreement, rendering it void under its own terms, and that even if Ubl and the government later reached agreement "in principle" on the terms of a settlement agreement, the defendants were not parties to those negotiations and could not be bound by them. See Ubl, 650 F.3d at 451-52; infra at 3-4.

discounts when applying for those contracts, but submitted false claims and overbilled the government after it had secured the contracts. Id. at 449. On May 6, 2008, the day trial was to begin, Ubl and IIF executed a settlement agreement; however, that agreement required government approval pursuant to the False Claims Act. Id.; see also 31 U.S.C. § 3730(b)(1). The government objected to the proposed $8.9 million settlement, stating that it "would never consent to the arrangement as it stands now." Ubl, 650 F.3d at 449-50. IIF consequently viewed the settlement agreement as void. Id. at 450.

Several months later, Ubl represented that he and the government had "resolved in principle between them the issues of the total Settlement Amount," and filed a motion to enforce the original May 6, 2008 settlement agreement. Id. at 450-51. The district court denied the motion, finding that "continued negotiations have resulted in material changes to the initial agreement" and IIF had not been a party to those negotiations. See No. 1:06cv641, Oct. 9, 2009 Tr. [Dkt. No. 360], at 12:3-9. That ruling was upheld on appeal. See Ubl, 650 F.3d at 452.[2]

It is from this juncture that the instant civil action arises. In support of defendants' opposition to Ubl's efforts

---

[2] Although it affirmed the denial of plaintiff's motion, the United States Court of Appeals for the Fourth Circuit reversed the district court's separate, post-verdict decision to award the defendants $501,546.00 in attorneys' fees. Ubl, 650 F.3d at 460.

3

to enforce the May 2008 settlement agreement, Kachouroff filed a declaration on October 5, 2009, claiming that based on telephone calls with government officials, he had evidence to believe that Ubl or Ubl's counsel had recommended that IIF be debarred from doing business with the federal government in violation of a term in the May 2008 settlement agreement requiring Ubl "not to refer either Defendant to any agency debarring official." Am. Compl. ¶¶ 4, 7. Ubl now asserts that Kachouroff lied in that declaration, and that his lies were intended to persuade the district and appellate courts not to enforce the settlement agreement. See id. ¶¶ 10-11, 16(a)-(b).[3]

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to assume the facts alleged in the complaint are true and to draw all reasonable inferences in the plaintiff's favor. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." O'Ryan v. Dehler Mfg. Co., Inc., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000). In

---

[3] The Amended Complaint contains two paragraphs numbered "16," which this Opinion labels "¶ 16(a)" and "¶ 16(b)," respectively.

addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, parties must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss. Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. DISCUSSION

In his amended complaint, which was originally filed in state court on June 12, 2012, and removed to this Court under its diversity jurisdiction, Ubl seeks at least $3 million in damages under theories of abuse of process (Count I) and negligent infliction of emotional distress (Count II). See Am. Compl. ¶¶ 20, 24; Pl.'s Opp'n to Def.'s Mot. to Dismiss Am. Compl. ("Opp'n") at 2 n.3. Kachouroff has moved to dismiss this

5

litigation on multiple bases; among them, that Ubl's claims fail to state cognizable causes of action.[4]

A. Abuse of Process

In Count I, Ubl alleges that "[i]n advancing a false declaration in support of his client's Opposition to the Motion to Enforce, . . . Kachouroff violated the ethical standards of his profession under the Virginia Rules of Professional Responsibility and he maliciously perverted the legal process in an attempt to convince the Court to deny the Motion to Enforce Settlement on a false premise." Am. Compl. ¶ 16(a). Under Virginia law, abuse of process requires "(1) the existence of an

---

[4] Kachouroff also argues that Ubl's amended complaint is time-barred. See Va. Code §§ 8.01-243(A) (applying two-year limitations period to "every action for personal injuries, whatever the theory of recovery"); 8.01-230 (generally defining accrual to occur on "the date the injury is sustained"). However, the general accrual rule does not apply to Ubl's abuse of process claim. See id. §§ 8.01-230 (creating exception for "where otherwise provided under § . . . 8.01-249"); 8.01-249(3) (deeming accrual to occur "when the relevant criminal or civil action is terminated" in actions for abuse of process). Moreover, Ubl has argued that the relevant periods were tolled by periods of his physical incapacity, to which he has referred in his complaint. See id. § 8.01-229(A)(2)(b); Am. Compl. ¶ 19 ("[T]hese ailments have rendered Mr. Ubl bedridden and incapacitated for months at a time since October 2009."). An affirmative defense based on a statute of limitations can be reached by a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Here, facts sufficient to rule on the statute of limitations have not been alleged in the amended complaint, and therefore the Court declines to reach this argument at this stage of proceedings.

6

ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." Donohoe Constr. Co., Inc. v. Mount Vernon Assocs., 369 S.E.2d 857, 862 (Va. 1988).

Here, plaintiff has failed to allege that any "process" was abused. In Virginia, an attorney's declaration in support of a pleading does not constitute the sort of "process or writ which has been lawfully and properly issued" that Virginia courts have considered essential to the tort. Ross v. Peck Iron & Metal Co., 264 F.2d 262, 267 (4th Cir. 1959); see Donohoe, 369 S.E.2d at 862 ("The distinctive nature of malicious abuse of process lies in the perversion of regularly-issued process . . . ."); Glidewell v. Murray-Lacy & Co., 98 S.E. 665, 670 (Va. 1919) ("We need hardly repeat that an action for abuse of process presupposes an originally valid and regular process, duly and properly issued."). Kachouroff properly defines "process" in terms of "the mandate of a court under its seal, whereby a party or an officer of the court is commanded to do certain acts," and refers to the panoply of Virginia statutes that consider "process" to constitute subpoenas, summonses, injunctions, orders, writs, warrants, and the like. Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Mot. to Dismiss"), at 8 (citing Va. Code §§ 1-237, 8.01-119, 8.01-246, 8.01-292).

7

Ubl contends that those statutes merely provide a non-exhaustive list of examples of process, and that the term's definition is far broader. To support this argument, he cites case law from jurisdictions outside of Virginia and the Fourth Circuit, see Opp'n at 18-19,[5] but fails to cite any Virginia or Fourth Circuit cases that have interpreted "process" to extend so broadly as to include a declaration submitted by an attorney during litigation. In fact, Virginia courts have clearly reached the opposite conclusion. See 7600 Ltd. P'ship v. QuesTech, Inc., 39 Va. Cir. 268, at *2 (Va. Cir. Ct. 1996) ("Misrepresentations do not fit within the definition of abuse of process in Virginia."); see also Atkins v. Ritchie, No. LC-116, 1980 WL 143159, at *2 (Va. Cir. Ct. Nov. 6, 1980) ("[T]he process that is envisioned in the cause of action for abuse of process is one of a legal nature and is one that might arise out of some kind of writ.").

---

[5] None of the outside authorities that Ubl cites have concluded that an attorney's declaration constitutes "process." Indeed, one of them observed, in dismissing an abuse of process claim, that

> It is not simply that any form of legal process, i.e., the filing of a motion or document with the court, is automatically considered process in the context of a claim for abuse of process; process in this form is used in the litigation of any matter. Within the context of tortious abuse of process, process refers to times when the authority of the court is used.

Rentea v. Rose, No. M2006-02076-COA-R3-CV, 2008 WL 1850911, at *4 (Ct. App. Tenn. Apr. 25, 2008).

The only two Virginia cases that Ubl cites, Glidewell v. Murray-Lacy & Co., 98 S.E. 665 (Va. 1919), and Ely v. Whitlock, 385 S.E.2d 893 (Va. 1989), are inapposite. Glidewell involved the swearing out of criminal warrants, which the Supreme Court of Virginia has consistently concluded exemplifies "process." 98 S.E. at 666-67; see also Triangle Auto Auction, Inc. v. Cash, 380 S.E.2d 649, 651 (Va. 1989); Mullins v. Sanders, 54 S.E.2d 116, 122 (Va. 1949). In Ely, defense counsel in a divorce suit filed an ethics complaint against plaintiff's counsel, which the trial judge ordered to be severed and considered after the conclusion of the divorce suit. 385 S.E.2d at 895. Nevertheless, during the divorce suit, defense counsel took depositions in support of her ethics complaint, instead of leaving any investigation to "the authorities charged with the prosecution of ethics complaints." Id. at 897. Plaintiff's counsel successfully sued for abuse of process and the Supreme Court of Virginia upheld the verdict, finding that the taking of depositions "sufficed to show 'an act in the use of the process not proper in the regular prosecution of the proceedings.'" Id. Like the swearing out of a criminal warrant, the taking of a deposition invokes judicial authority in that the issuance of a summons or a subpoena is used to compel the witness's attendance. See, e.g., Va. Code § 1-237 ("'Process' includes

9

subpoenas, the summons and complaint in a civil action, and process in statutory actions.").

Ubl's attempt to loosely analogize Ely's holding to cover attorney-filed declarations would sweep within the ambit of the abuse of process cause of action all alleged misrepresentations in attorneys' pleadings and arguments, a result not supported by any Virginia authority. Because Kachouroff's declaration does not, as a matter of law, constitute "process," Ubl's claim fails.[6]

Even if an attorney's declaration constituted "process," Ubl has also failed to allege an "ulterior purpose" for filing the declaration apart from offering it to support a pleading. "A legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process"; rather, "[t]he gravamen of the tort lies in the abuse or the perversion of the process after it has been issued." Donohoe, 369 S.E.2d at 862; see also Ross, 264 F.2d at

---

[6] At oral argument, plaintiff's counsel suggested that he could cure the deficiencies of his abuse of process claim through an amendment. But nothing in the proposed amendment would remedy the defects described above. "'[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)) (emphasis in original). Counsel's proposed amendment would be futile because he is unable to identify any "process" to which he can anchor his cause of action. Cf. Donohoe, 369 S.E.2d at 862. Therefore, leave to amend has been denied.

267-68. Kachouroff correctly argues that using a declaration to bolster a pleading should be distinguished from the kinds of collateral motives that Virginia courts have found to constitute "ulterior purposes," such as collecting a civil debt by issuing a criminal warrant, Mullins, 54 S.E.2d at 122, or embarrassing and extorting money from individuals by serving process on them, Steverding v. Nebel, 29 Va. Cir. 347, at *1-2 (Va. Cir. Ct. 1992).

Ubl responds that Virginia does not limit abuse of process claims to unlawful acts only meant to affect collateral proceedings or to achieve a collateral purpose, and implies that this cause of action extends to any act during litigation that is undertaken for an unlawful purpose. He has no support for this argument and ignores the Fourth Circuit's specific statement in Ross that "[t]he crux of the tort of abuse of process" depends on whether process was issued "not for the purpose for which it was intended, but for some collateral object." 264 F.2d at 267-68. Indeed, as Kachouroff observes, Ubl's position that the actionable "abuse of process" arises from the contents of the declaration at issue is backwards; rather, it is the propriety of the use to which process is put after it is issued that defines the cause of action. See Montgomery v. McDaniel, 628 S.E.2d 529, 533 (Va. 2006) (analyzing whether "the pleadings recite a routine use of

process"); Triangle, 380 S.E.2d at 650 ("Abuse of process involves the wrongful use of process after it has been issued." (emphases in original)); Glidewell, 98 S.E. at 668 ("[T]he abuse consist[s] in its perversion to some unlawful purpose and in the willful and oppressive use of it after its issue." (emphasis added)). The amended complaint does not allege that Kachouroff used the declaration he filed for any improper purpose; indeed, the amended complaint alleges that defense counsel merely cited the declaration as part of an argument in the qui tam litigation which, as discussed above, was a secondary argument not relied upon by either the district or appellate courts for any decision. See supra at n.1. Because plaintiff has failed to allege any facts showing that the declaration was used for any purpose other than to support a position in litigation, he also fails to sufficiently allege the misuse element of his abuse of process claim, which must, therefore, be dismissed.[7]

---

[7] Ubl urges that refusing to recognize his abuse of process claim "would be tantamount to permitting an attorney or party opponent to freely enter into unethical conduct, perjury, discovery abuses, and other unlawful conduct as long as it concerned the original litigation and not an outside proceeding." Opp'n at 16. His concern that dismissing his claim would allow attorneys to file untrue declarations with impunity is defeated by the existence of various means for punishing such conduct, including prosecution for perjury or sanctions under Fed. R. Civ. P. 11, 37, or 60(b).

B. Negligent Infliction of Emotional Distress

Ubl's negligent infliction of emotional distress claim similarly fails as a matter of law. Kachouroff and Ubl were admittedly "in an adversarial relationship" during the underlying qui tam litigation. Am. Compl. ¶ 22. The Supreme Court of Virginia has decisively held that an attorney is not liable to an opposing party for negligent infliction of emotional distress, absent foreseeable reliance by that party on the attorney's conduct. See Ayyildiz v. Kidd, 266 S.E.2d 108, 112-13 (Va. 1980). As the Ayyildiz court explained:

> An attorney's liability for damages generally is only to his client following some dereliction of duty to the client. . . . "[T]he attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct."

Id. at 112 (citation omitted); see also Covington v. Haboush, 28 Va. Cir. 360, at *5 (Va. Cir. Ct. 1992) (applying Ayyildiz to find that neither the Code of Professional Responsibility nor the sanctions statute gives rise to a private cause of action against an attorney). Although Ubl acknowledges this general principle, he summarily dismisses it as inapplicable to Kachouroff's "gross misrepresentations" and tries to recast his

13

claim as intentional infliction of emotional distress. See Opp'n at 21-22 (suddenly referring to the filing of the declaration as an "intentional tort[]" and an "attempt to willfully and intentionally harm [plaintiff] with known falsities"). Of course, an intentional infliction of emotional distress claim would be even more problematic for plaintiff, who would have the heightened burden of pleading sufficiently that defendant's filing of the declaration was "intentional or reckless" in addition to constituting conduct that was "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality" and that had "a causal connection" to "severe" emotional distress. Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974). The amended complaint simply does not allege such facts.

Kachouroff also argues that Ubl has failed to allege an adequate physical injury related to the filing of the declaration. "[W]here the claim is for emotional disturbance and physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence." Hughes v. Moore, 197 S.E.2d 214, 219 (Va. 1973). Kachouroff disputes that there is any allegation in

14

the Amended Complaint sufficient to show that any exacerbation of Ubl's preexisting medical conditions was "the natural result of fright or shock" caused by the filing of the declaration, citing a Virginia case in which the court sustained a demurrer when the plaintiff claimed intentional or negligent infliction of severe emotional distress based on the filing of a complaint against her. See Berry v. Clark, 42 Va. Cir. 1, at *3 (Va. Cir. Ct. 1996) ("The distress must be so severe that 'no reasonable person [should] be expected to endure it.' The pleading fails to allege facts of extreme action, given that the adversarial posture in litigation naturally causes some stress.") (citation omitted). Moreover, Ubl's pattern of civil litigation and evident familiarity with the legal system,[8] as well as his

---

[8] Ubl filed unrelated qui tam litigation in 1997, which was dismissed without prejudice after the government investigated the allegations and declined to intervene. See Ubl v. Savin Corporation ("Savin I"), No. 1:97-mc-117-JCC-TCB (E.D. Va. filed Nov. 17, 1997). Ubl re-filed his complaint in 1999, but voluntarily dismissed it with the government's consent. See Ubl v. Savin Corporation ("Savin II"), No. 1:99-mc-81-JCC (E.D. Va. filed Nov. 1, 1999). Eight years later, Ubl sought to "reopen his earlier action in order to obtain a share of funds that he claims are the proceeds of a Government settlement with the Defendant in his action," but the court denied his motion, finding it "utterly meritless." Savin I, Dkt. No. 22, 2006 WL 1050650, at *4 (E.D. Va. Apr. 18, 2006), aff'd 217 F. App'x 237 (4th Cir. 2007). Kachouroff also indicates that as recently as June 2011, Ubl filed a breach of contract action in Ohio state court and settled the litigation, moved to enforce the judgment, and pursued a levy to execute the judgment, all while proceeding pro se. See Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Reply"), Exs. C-D (containing copies of the docket

initiation and pursuit on appeal of the qui tam litigation underlying this civil action, undercut any claim of severe physical injury from "fright or shock" connected with opposing counsel filing a declaration to support a pleading in that litigation. For these reasons, Ubl fails to allege sufficient facts to support a claim of negligent or intentional infliction of emotional distress.[9]

## IV. CONCLUSION

For the above-stated reasons, the defendant's Motion to Dismiss Plaintiff's Amended Complaint will be granted by an Order issued with this Memorandum Opinion.

Entered this 8th day of April, 2013.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

sheet and complaint in Ubl v. Int'l Trade Network, No. 11CVF01342 (Willoughby Mun. Ct. filed June 20, 2011)).

[9] In his motion to dismiss, Kachouroff briefly advanced the theory that Ubl's state law claims are preempted by the power of federal courts to police their own proceedings. See Mot. to Dismiss at 12-13. Kachouroff cited virtually no case law to support this argument and did not renew it in his reply brief. Moreover, there is no support for his position that state law claims against an attorney are not cognizable in a federal court sitting in diversity. Because his other arguments are dispositive of the instant motion, this argument will not be further addressed.